[No. C064745. Third Dist. Jan. 19, 2012.]

E.C., Plaintiff and Appellant, v.
J.V., Defendant and Respondent.

COUNSEL

Chapman, Popik & White, Susan M. Popik and Merri A. Baldwin for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

OPINION

RAYE, P. J.—E.C. (appellant), the former same-sex partner of J.V. (respondent), appeals from a trial court order finding appellant failed to establish that she is a presumed parent of respondent's biological child, L.V. (the minor), under Family Code section 7611, subdivision (d) (hereafter section 7611(d)).[1] On appeal, appellant contends the trial court misapplied the law for determining presumed parent status under the Uniform Parentage Act (UPA; § 7600 et seq.) and erred in finding she failed to satisfy her burden of proof at trial. Appellant asks this court not only to reverse the trial court's decision, but also to find that she is a presumed parent of the minor and it would be an abuse of discretion to rebut that presumption.

We agree the trial court misapplied the UPA to the facts of this case. Accordingly, we shall remand the matter to allow the trial court to exercise its discretion with a clear understanding of the UPA and its purpose.

## BACKGROUND[2]

In 2002 respondent was in a sexual relationship with Brian P. In the course of that relationship, respondent became pregnant; soon afterward she ended her relationship with Brian. Respondent then became good friends with appellant.

---

[1] Undesignated statutory references are to the Family Code.

[2] The facts are taken in large part from the trial court's written opinion, wherein the court summarizes the evidence taken at the evidentiary hearing. There is no reporter's transcript.

During respondent's pregnancy, appellant took respondent to her doctor's appointments. Appellant was respondent's Lamaze childbirth preparation class partner, and they often spent the night at each other's homes. Appellant was with respondent during the birth of the minor; appellant even cut the umbilical cord.

After the minor was born, respondent and the minor lived with respondent's mother until the minor was three months old, when they moved into appellant's home. Sometime thereafter, appellant and respondent's relationship became sexual, but they did not immediately tell their families.

Appellant and respondent remained in a committed relationship for the next five years. During their relationship, appellant gave respondent a ring and they discussed entering into a domestic partnership but never did.

Appellant took the minor to her doctor's appointments and extracurricular activities. Appellant joined the Air Force in August 2005, and when she had to leave town to perform her service, respondent and the minor moved in with appellant's mother. Appellant signed up the minor for kindergarten and listed herself as the minor's "step-parent or legal guardian" on the kindergarten registration form.

While appellant was away serving in the military, she and respondent exchanged letters. In one of her letters, respondent told appellant how the minor lay down next to her and "rubbed [respondent's] face." Respondent wrote, "It made me think we made this loving little girl & she loves us both dearly." She also told appellant, "You want to know something funny? [The minor] calls your mama 'GRANDMA.' . . . Hopefully she gets close to your mom!"

In another letter, respondent referred to appellant's wish to have parental rights to the minor: "Well, I can see that your [sic] pretty serious about the custody thing. We'll talk about it some more when you come home for Christmas K [sic]? I think it's a great idea."

Brian, the minor's biological father, visited the minor a few times when she was an infant, but he was not involved in her life. Brian never tried to establish paternity and he provided no financial support for the minor.

In April 2008 appellant and respondent's relationship ended. The minor was nearly five years old. Respondent and appellant agreed appellant would have "visitation" with the minor, and they agreed to share the holidays. The minor still wanted appellant to attend her kindergarten graduation. Then, in

February 2009, "communication between [appellant] and [respondent] broke down," and respondent then "prevented [the minor] from visiting with [appellant]."

Five months later, appellant filed a petition to establish a parental relationship with the minor. Along with her petition, appellant filed an order to show cause, seeking joint custody of the minor and visitation. Respondent opposed both the petition and the order to show cause, saying that appellant was the minor's godmother only, not a coparent.

The matter proceeded to an evidentiary hearing, where both appellant and respondent presented evidence in support of their positions. Appellant's mother, R.C., testified that although they were only friends at first, after the minor was born she perceived appellant, respondent, and the minor as a "family unit." R.C. further testified that appellant told people the minor was appellant's daughter. R.C. treated the minor as her own granddaughter and attended the minor's extracurricular activities. The minor did not call R.C. "Grandma," but simply R.C.

Appellant's sister, M.A., also testified that appellant, respondent, and the minor were a "family unit." M.A. said the minor called her "Auntie [M.]," and the minor considered M.A.'s children to be her cousins.

Heather R. met respondent, appellant, and the minor in 2007. Her daughter and the minor were in cheerleading together. It was Heather's impression that respondent, appellant, and the minor were "a family," that respondent and appellant were the minor's two moms. Heather described how appellant would bring the minor to practice and respondent would join them later. Heather also remembered that appellant referred to the minor as "her daughter" and "[respondent] never corrected her."

David L., another mutual friend of respondent and appellant, also testified. David was with respondent, appellant, and the minor approximately three times a week. He remembered that appellant "acted as [the minor's] other mother," and he too thought of them "as a family." Like Heather, David also heard appellant refer to the minor as her daughter and respondent never corrected her.

Appellant's supervisor from work also testified that appellant called the minor "her daughter."

In support of her position, respondent presented testimony from her mother, her sister, one of her friends, and the minor's godfather. Each of

respondent's witnesses testified that "appellant was referred to as the minor's Godmother and nothing more. She was not considered her other mother."

Respondent also testified at trial. Respondent was "adamant" that she did not consider appellant to be the minor's "parent." Respondent admitted appellant "was there for [the minor] since day one," but she never intended for appellant to be the minor's other parent. Respondent always assumed appellant would be the one to take care of the minor if something happened to respondent, but appellant was only the minor's godmother; appellant baptized the minor and the minor called her "Nina" for "godmother." She remembered appellant would "get angry" when they discussed the fact appellant had no legal rights to the minor, and they discussed appellant's adopting the minor but never agreed to pursue it.

Respondent had not planned for appellant to cut the minor's umbilical cord. She clarified that appellant did sign up the minor for kindergarten but only because respondent had to be at work, and she did not authorize appellant to list herself as a legal guardian on the kindergarten registration form.

Respondent admitted she and appellant had a long-term, committed relationship, with some stops and starts. It took her a year to tell her family that the relationship between her and appellant had become sexual. After that, respondent and appellant revealed the sexual nature of their relationship only to close friends and family.

The matter was taken under submission. Pending the trial court's decision, the court ordered visitation between appellant and the minor on alternate Saturdays from 9:00 a.m. to 7:00 p.m. Nearly three months later, the court issued a written ruling that appellant had failed to prove by a preponderance of the evidence that she was a presumed parent under section 7611(d).

The trial court based its decision on the following: "[Appellant] and [respondent] did not register as domestic partners either before or after the birth of [the minor]. They did not participate in a commitment ceremony. They did not make a conscious decision to have a child and raise it as theirs before [the minor] was born and were in fact only very good friends when [the minor] was born. They did not live together immediately after [the minor] was born and waited to tell their families about their relationship. [Appellant] and [the minor] [*sic*] did not live together continuously throughout their relationship. The families of both believed they were simply good friends during the first part of [the minor's] life. They did not give [the minor appellant's] surname. She was not listed on the birth certificate and [appellant] did not claim [the minor] on her taxes. [Respondent], the natural

biological mother of [the minor] never intended [appellant] to be another parent. She was [the minor's] Godmother and she was [respondent's] long-term girlfriend."

The court reserved jurisdiction to make any findings regarding visitation. Appellant appeals from this order.

## DISCUSSION

On appeal, appellant argues the trial court applied the wrong analysis under the UPA in finding she is not a presumed parent of the minor (now eight years old), and that "the uncontradicted evidence established that [she] satisfied her burden of proof under section 7611(d) as a matter of law."

### I.

We review the trial court's factual findings under the substantial evidence standard. (*Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, 368–369 [96 Cal.Rptr.3d 26] (*Charisma R.*).) " 'Under that standard, we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment.' " (*Id.* at p. 369.) However, "[a] discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order. [Citations.]" (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124–1125 [124 Cal.Rptr.3d 200].)

### II.

▬ Whether the trial court erred in determining that appellant is not a presumed parent of the minor is governed by the UPA. The UPA defines the " '[p]arent and child relationship' " as "the legal relationship existing between a child and the child's natural or adoptive parents . . . ." (§ 7601.) Under the UPA, a woman is presumed to be the natural mother of a child if she "receives the child into [her] home and openly holds out the child as [her] natural child." (§ 7611(d).)[3] "A [woman] who claims entitlement to presumed

---

[3] Although section 7611 speaks in terms of fathers, the UPA expressly provides that the provisions applicable to determining a father and child relationship shall be used to determine a mother and child relationship "[i]nsofar as practicable." (§ 7650, subd. (a); see also *Elisa B. v.*

[mother] status has the burden of establishing by a preponderance of the evidence the facts supporting [her] entitlement. [Citation.] . . . ▉ The Family Code section 7611(d) presumption, once it arises, 'may be rebutted in an appropriate action only by clear and convincing evidence.' " (*In re J.O.* (2009) 178 Cal.App.4th 139, 147–148 [100 Cal.Rptr.3d 276], quoting § 7612, subd. (a).)

▉ To be a presumed parent, a person does not have to be married to the other parent (*Johnson v. Calvert* (1993) 5 Cal.4th 84, 88–89 [19 Cal.Rptr.2d 494, 851 P.2d 776]) or registered as his or her domestic partner (*Elisa B., supra*, 37 Cal.4th at pp. 114, 125). A presumed parent need not have ever lived with the child's other parent (*In re A.A.* (2003) 114 Cal.App.4th 771, 784 [7 Cal.Rptr.3d 755] (*A.A.*)) and may not have even known the other parent (*In re Salvador M.* (2003) 111 Cal.App.4th 1353, 1355–1356, 1358 [4 Cal.Rptr.3d 705] (*Salvador M.*)).

Nevertheless, a presumed parent is not just a casual friend of the other parent, or even a long-term boyfriend or girlfriend, but someone who has entered into a familial relationship with the child: someone who has demonstrated an abiding commitment to the child and the child's well-being, regardless of his or her relationship with the child's other parent. (See *In re Sabrina H.* (1990) 217 Cal.App.3d 702, 708 [266 Cal.Rptr. 274] (*Sabrina H.*); see also *In re T.R.* (2005) 132 Cal.App.4th 1202, 1211–1212 [34 Cal.Rptr.3d 215] (*T.R.*).)

The evidence adduced at a trial on presumed parenthood status must therefore be considered for the purpose of determining an alleged parent's commitment to the minor child and that child's welfare. Indeed, that is the very purpose of the UPA—to distinguish those who have demonstrated a commitment to the child regardless of biology and grant them the "elevated status of presumed [parenthood]." (*T.R., supra*, 132 Cal.App.4th at pp. 1211–1212.)

Such purpose furthers the well-established policy in California that "whenever possible, a child should have the benefit of *two* parents to support and nurture him or her." (*Librers v. Black* (2005) 129 Cal.App.4th 114, 123 [28 Cal.Rptr.3d 188].) As noted by the Supreme Court in *Elisa B.*: " 'There is a compelling state interest in establishing paternity for all children. Establishing paternity is the first step toward a child support award, which, in turn, provides children with equal rights and access to benefits, including, but not

*Superior Court* (2005) 37 Cal.4th 108, 119–120 [33 Cal.Rptr.3d 46, 117 P.3d 660] (*Elisa B.*) [" 'Though most of the decisional law has focused on the definition of the presumed father, the legal principles concerning the presumed father apply equally to a woman seeking presumed mother status. [Citation.]' "].)

limited to, social security, health insurance, survivors' benefits, military benefits, and inheritance rights. . . .' [¶] By recognizing the value of determining paternity, the Legislature implicitly recognized the value of having two parents, rather than one, as a source of both emotional and financial support, especially when the obligation to support the child would otherwise fall to the public." (*Elisa B., supra*, 37 Cal.4th at p. 123, quoting § 7570.)

With these legal standards in mind, we review the facts of this case.

### III.

Here, the trial court ruled that appellant failed to prove by a preponderance of the evidence that she was a presumed parent under section 7611(d). The court did not explain whether appellant failed to prove she received the minor into her home or failed to prove she held out the minor as her natural child. Accordingly, we consider both issues.

The first legal issue presented to the court under section 7611(d) is whether appellant received the minor into her home. It is uncontroverted that when the minor was three months old, she (and respondent) moved into appellant's home. It also is uncontroverted that when appellant left town to serve in the military, she moved the minor (and respondent) into appellant's mother's home.

Rather than consider this uncontroverted evidence, however, the trial court relied on the fact that appellant and *respondent* did not "live together immediately after [the minor] was born . . . ." Whether appellant and respondent ever lived together is inessential to the legal question presented under section 7611(d). Indeed, a person can obtain presumed parent status without ever living with the other parent. (See *Salvador M., supra*, 111 Cal.App.4th at p. 1357 [minor's half sister found to be presumed parent never lived with minor's father]; see also *A.A., supra*, 114 Cal.App.4th at p. 784 [de facto father found presumed father though he never lived with minor's mother].) The essential consideration is whether appellant received the minor into her home, which she undeniably did.

Moreover, nothing in section 7611(d) requires appellant to have received the minor into her home immediately after the minor's birth, only that appellant did receive the minor into her home—a fact that is undisputed. Thus, on this record, we conclude appellant received the minor into her home and satisfied the first element required to establish presumed parent status.

To obtain presumed parent status, appellant was next required to prove by a preponderance of the evidence that she held out the minor to be

her natural child. (§ 7611(d).) That appellant has no genetic connection to the minor "does not necessarily mean that she did not hold out the [minor] as her 'natural' [child] under section 7611." (*Elisa B., supra*, 37 Cal.4th at p. 120.) In *In re Nicholas H.* (2002) 28 Cal.4th 56 [120 Cal.Rptr.2d 146, 46 P.3d 932] (*Nicholas H.*), the Supreme Court found the alleged father to be a presumed parent despite his admission that he was not the child's biological father. Consistent with the purpose of the UPA, determining whether the alleged parent has demonstrated a commitment to the child and the child's welfare, the court reasoned that living with a child and treating that child as a son or daughter creates a relationship between the alleged parent and the child that is more important to the child than a biological relationship. (*Nicholas H.*, at p. 65.) Accordingly, that relationship " ' " ' "should not be lightly dissolved." ' " ' " (*Ibid.*)

In determining whether an alleged parent has held a child out as his or her natural child, courts look to the conduct of the alleged parent: "whether the man actively helped the mother in prenatal care; whether he paid pregnancy and birth expenses commensurate with his ability to do so; whether he promptly took legal action to obtain custody of the child; whether he sought to have his name placed on the birth certificate; whether and how long he cared for the child; whether there is unequivocal evidence that he had acknowledged the child; the number of people to whom he had acknowledged the child; whether he provided for the child after it no longer resided with him; whether, if the child needed public benefits, he had pursued completion of the requisite paperwork; and whether his care was merely incidental." (*T.R., supra*, 132 Cal.App.4th at p. 1211.)

An alleged parent is not required to show each and every one of these factors exists to obtain presumed parent status. (*Charisma R., supra*, 175 Cal.App.4th at p. 376.) The list does, however, illuminate a common thread: whether, through his or her conduct, an alleged parent has demonstrated a commitment to the minor child and the minor child's well-being, thereby distinguishing the alleged parent as someone who has entered into a familial relationship with the child from someone who has not. (*Sabrina H., supra*, 217 Cal.App.3d at p. 708.)

As we explain here, the trial court's analysis of the legal issues presented by appellant's petition makes it apparent the court considered facts irrelevant to determining her commitment to the minor. This was error. Further, to the extent the court considered relevant facts, the court considered them only in assessing respondent and appellant's relationship, not in evaluating how their relationship may have demonstrated appellant's commitment to the minor. This too was error.

First, the trial court wrongly relied on facts regarding the nature and quality of the relationship between appellant and respondent. Most notably, the court relied on the fact that appellant and respondent were only close friends when the minor was born. Whether appellant and respondent had a sexual relationship when the minor was born is not a relevant factor in determining appellant's commitment to the minor. However, factors such as appellant's taking respondent to her prenatal appointments, being respondent's Lamaze partner, being in the room when the minor was born, cutting the umbilical cord, and taking the minor into her home when the minor was three months old do demonstrate appellant's commitment to the child. (See *Charisma R., supra*, 175 Cal.App.4th at p. 376 [discussing "types" of factors court may consider under § 7611(d)].)

In *Salvador M.*, the minor's adult half sister, Monica, was his alleged parent. (*Salvador M., supra*, 111 Cal.App.4th at pp. 1358–1359.) Monica and her half brother shared a mother, who had died in a car accident, and the minor's father was a married man whose identity was unknown to Monica. (*Id.* at p. 1356.) The Court of Appeal found Monica to be Salvador's presumed parent, never asking if she had a sexual relationship with either of Salvador's biological parents. Indeed, we can assume that she did not. Instead, the court appropriately focused on Monica's stalwart commitment to Salvador's well-being, noting that even Salvador thought Monica was his mother. (*Id.* at pp. 1358–1359.)

 The court's analysis in *Salvador M.* highlights the trial court's error here. The relationship between a child's alleged parent and biological parent is legally irrelevant in determining whether the alleged parent held out that child as his or her natural child. The relevant relationship is that between the child and the alleged parent. (Cf. *Nicholas H., supra*, 28 Cal.4th at p. 65 [presumed parent status intended to preserve important relationship created between alleged parent and child when alleged parent has treated that child as son or daughter].) Thus, by focusing its attention on the sexual relationship between appellant and respondent, the court failed to analyze the relationship between appellant and the minor. This was error.

The trial court here also found it relevant that when appellant and respondent began having a sexual relationship, they did not immediately inform their families. Whether and when the women told their families they were having sex is not a relevant factor in determining appellant's commitment to the minor. If appellant had remained unknown to respondent's family, if they never knew appellant was respondent's Lamaze partner, or that she was in the room when the minor was born, or that she had taken in respondent and the minor when the minor was still an infant—such secrecy might speak to appellant's commitment to the minor. But simply waiting to tell their families about what was going on in their bedroom does not.

■ Had appellant and respondent never told their families they were having sex, the families still would have seen appellant supporting the minor from the time respondent was pregnant until respondent prevented her from doing so. Accordingly, whether and when appellant and respondent told their families they were having a sexual relationship is an inappropriate factor to consider under section 7611(d).

■ The court also considered it important that appellant and respondent did not live together continuously throughout their relationship. That factor is not critical in determining whether appellant held out the minor to be her natural child. Whether the parents live together and for how long demonstrates their commitment to each other, not to the child. (See *A.A., supra*, 114 Cal.App.4th at p. 784.) Accordingly, section 7611(d) does not include a cohabiting requirement. (*A.A.*, at p. 784.)

Furthermore, for at least some period of time when appellant and respondent were not living together, appellant was serving in the military. During that time, the minor (and respondent) lived with appellant's mother. That appellant secured shelter for the minor with her family while she was away tends to show appellant was committed to the minor's well-being, not the contrary.

In concluding appellant failed to meet her burden at trial, the trial court also relied on respondent's testimony that she never intended for appellant to be the minor's other mother. Respondent's intent is only relevant if she manifested that intent through her conduct and precluded appellant from holding out the minor as her natural child.

It is undisputed that appellant took respondent to her prenatal appointments, was her Lamaze partner, and was in the delivery room when the minor was born. After the minor's birth, appellant took her to her doctor's appointments and extracurricular activities. Appellant signed up the minor for kindergarten and listed herself as the minor's stepparent or legal guardian on the registration form.

It also is undisputed that appellant referred to the minor as her daughter at work and in front of friends and family, and respondent never corrected her. When respondent and appellant's relationship ended, respondent agreed to a visitation schedule with appellant and the minor, and agreed to share the holidays with her as well.

Accordingly, on this record, respondent's "intent" does little to demonstrate appellant's commitment to the minor or lack thereof, because while respondent may not have intended for appellant to obtain any legal rights to the minor, the record is replete with evidence that she allowed, even encouraged, appellant to coparent the minor from the beginning.

■ In denying appellant presumed parent status, the trial court also found it critical that appellant and respondent did not orchestrate respondent's pregnancy in order to raise a child as their own. It is a matter of simple biology that, unlike a heterosexual couple, gay and lesbian couples cannot accidentally have children. If a gay or lesbian couple wants to have a child, a great deal of planning and process is required. Thus, if a gay or lesbian couple has made the decision to have a child and has successfully pursued that process, such circumstances may be relevant to determining an alleged parent's commitment to that child. The inverse, however, is not necessarily true.

As with heterosexual couples, the failure to plan for a child does not demonstrate an alleged parent's lack of commitment to that child's well-being; it is the alleged parent's conduct after the child's conception and birth that does so. (See, e.g., *A.A., supra,* 114 Cal.App.4th at pp. 777, 783–784 [alleged father obtained presumed parent status though he did not plan for mother to become pregnant by another man].) It was therefore error for the trial court to consider appellant's lack of involvement in respondent's impregnation as evidence that appellant was not committed to the minor's well-being.

■ In finding appellant failed to prove she received the minor into her home and held out the child as her natural child, the trial court also considered that appellant did not claim the minor as a dependent on her income tax returns, did not put her name on the minor's birth certificate, and did not give the minor her surname. That an alleged parent failed to do any one of these things may be appropriate evidence to consider in evaluating an alleged parent's commitment to a child. The weight given that evidence, however, will depend upon why the alleged parent failed to do these things. For example, if an alleged parent is precluded by law from claiming a child on his or her tax returns, the alleged parent's failure to do so may not carry much weight in the analysis.

■ Thus, on balance, given the impropriety of the other factors considered, we cannot conclude the court would have exercised its discretion in the same way given a clear understanding of section 7611(d) and its purpose.

Accordingly, we remand the matter to allow the trial court to exercise its discretion with a clear understanding of the law and determine whether appellant held out the minor to be her natural child. (See *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 629 [98 Cal.Rptr.2d 388] ["Where discretion has been exercised in a manner that exceeds the applicable legal standards, the proper remedy is to reverse the order and remand the matter to the trial court in order to give it the

opportunity to make a ruling that comports with those standards."].) If, on remand, the trial court concludes appellant in fact did hold out the minor to be her natural child, and thus is a presumed parent, the trial court must then consider whether this is an appropriate case for rebutting that presumption. (§ 7612.)

## DISPOSITION

The order is reversed and the matter is remanded for further proceedings consistent with this opinion. Appellant shall recover costs on appeal.

Hull, J., and Hoch, J., concurred.