Filed 5/16/13  Domestic Partnership of C.P. and D.F. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re the Domestic Partnership of C.P. and D.F. | |
| C.P., <br><br> Appellant, <br><br> v. <br><br> D.F., <br><br> Respondent. | E052672 <br><br> (Super.Ct.No. RFLRS051024) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Affirmed.

C.P., in pro. per., for Appellant.

Thompson & Thompson, Byron C. Thompson and Jeffrey S. Valladolid for Respondent.

1

In an action for dissolution of a domestic partnership, the family law court awarded joint custody of the partners' child. C.P. (also referred to sometimes as appellant), who gave birth to the child, contends that a person other than the birth parent may not be awarded custody unless the birth parent is found to be unfit. She relies on outdated authority, however, and applying current authority and the appropriate standard of review, we find that substantial evidence supports the family law court's ruling.[1]

Appellant also challenges the family law court's denial of spousal support. We find no abuse of discretion.

BACKGROUND

C.P. and D.F, a same-sex couple living together in a committed relationship, decided in 2003 that they wanted to raise a child together. Initially, they agreed to adopt. They investigated foreign-country adoptions and began a year-long process toward adoption. They went so far as to meet a prospective adoptive child and have the child stay with them for two days. C.P. decided, however, not to go through with the adoption because she wanted a child of her "own" and felt that she could not love a child who was not her biological child. D.F. was "devastated," but ultimately agreed that C.P. would

_____

[1] In addition to relying on superseded authority, C.P. states the facts in the light most favorable to her. Because both of the issues she raises are reviewed under the substantial evidence standard, we are required to view the evidence in the light most favorable to the judgment. (*Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, 368-369, disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7.) We note that we could justifiably find that by failing to discuss the evidence in accordance with the substantial evidence rule, petitioner has waived her right to review. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) However, in light of the importance of a decision regarding the custody of a child, we will address the merits.

attempt to conceive by artificial insemination using an anonymous sperm donor and that they would raise the child together. D.F. and C.P. jointly selected a fertility clinic and jointly selected the sperm donor. They shared expenses related to the baby equally and jointly prepared their home for the baby. D.F. accompanied C.P. to some of her prenatal medical appointments. She was present for a sonogram.

In 2004, C.P. gave birth to H. D.F. was present for the birth and drove them home after C.P. was released from the hospital. C.P. asked to have D.F. named on the birth certificate, but the "lady in charge" at the hospital refused. C.P. and D.F. sent out birth announcements and chose their best friends to be H.'s godparents.

Shortly before H. was born, C.P. and D.F. registered their domestic partnership, pursuant to Family Code sections 297 and 298.5.[2]

C.P. and D.F. shared a home owned by D.F. H. lived with both C.P. and D.F. from birth, and both women cared for her. C.P. was able to take six months maternity leave because she delivered by Cesarean section. D.F. was not able to take such a long leave, but she took a three-week maternity leave. When C.P. returned to work, she worked the graveyard shift in order to be with H. during the majority of her waking hours. D.F. worked days, and cared for H. when C.P. was at work. D.F. turned down a position she was offered shortly after H. was born so that she would be more available to care for H. She also turned down some overtime. D.F. and C.P. shared childcare expenses and other expenses related to H. equally.

_____

[2] All statutory citations refer to the Family Code, unless another code is specified.

3

In September 2006, C.P. and D.F. decided to end their relationship. D.F. moved out of their shared home temporarily, until C.P. moved out with H. On October 19, 2006, C.P. filed a petition for dissolution of the domestic partnership.

Beginning August 14, 2008, a hearing was held on division of property, spousal support and custody and support of H. On July 12, 2010, the court issued its proposed statement of decision. After proceedings on C.P.'s objections to the statement of decision, judgment was entered on November 15, 2010. The judgment found D.F. to be H.'s presumed parent. It awarded joint legal custody and physical custody of H. and ordered D.F. to pay $261 a month in child support to C.P. The judgment terminated both parties' right to receive spousal support from the other.

C.P. filed a timely notice of appeal.

DISCUSSION

1.

SUBSTANTIAL EVIDENCE SUPPORTS THE FINDING THAT D.F.

IS A PRESUMED PARENT

C.P. contends that because she is H.'s biological parent and D.F. is not, the order for joint legal custody violates her due process right to raise her child. She contends that "California law recognizes only one mother." The essence of her position is simply that her biological maternity trumps all other considerations. The law holds otherwise.

In *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108 (*Elisa B.*), the California Supreme Court addressed the "parental rights and obligations, if any, of a woman with regard to a child born to her partner in a lesbian relationship." (*Id.* at p. 113.) Section

4

7611 provides in part that a man is presumed to be the natural father of a child if he "receives the child into his home and openly holds out the child as his natural child." (§ 7611, subd. (d).) Section 7650 provides that provisions applicable to determining a father and child relationship shall be used to determine a mother and child relationship "[i]nsofar as practicable." (§ 7650, subd. (a).) In *Elisa B.*, the court held that the presumed father principle applies to a woman in a same-sex relationship. (*Elisa B.*, at pp. 119-120.) Further, the court held, as it had in previous cases, that the lack of a biological relationship does not preclude the putative presumed parent from proving that he or she held the child out as his or her natural child. (*Id.* at p. 126 ["'natural' as used in the [Uniform Parentage Act] does not always mean 'biological'"]; accord, *In re Nicholas H.* (2002) 28 Cal.4th 56, 62-70; *In re Jesusa V.* (2004) 32 Cal.4th 588, 604.) Rather, a presumed parent is "someone who has entered into a familial relationship with the child [and has] demonstrated an abiding commitment to the child and the child's well-being, regardless of his or her relationship with the child's other parent" (*E.C. v. J.V.* (2012) 202 Cal.App.4th 1076, 1085), and regardless of his or her biological relationship to the child. And, where the child would otherwise have only one parent, allowing a person who is not the biological parent to obtain presumed parent status furthers California's policy that

"'whenever possible, a child should have the benefit of *two* parents to support and nurture him or her.' [Citations.]" (*Elisa B.*, at p. 123.) [3]

At trial, D.F. bore the burden of proving by a preponderance of the evidence that she qualified as H.'s presumed mother. (*Charisma R. v. Kristina K.*, *supra*, 175 Cal.App.4th at p. 368.) On appeal, we review the trial court's determination under the substantial evidence standard. (*Ibid*.) "'Under that standard, we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment. . . . We must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and

---

[3] The version of the domestic partnership statutes which took effect on January 1, 2005, expanded the rights and obligations of domestic partners. Among other things, the legislation provides that "[t]he rights and obligations of registered domestic partners with respect to a child of either of them shall be the same as those of spouses." (§ 297.5, subd. (d).)

C.P. and D.F. registered their domestic partnership in 2004, before the effective date of the current legislation. C.P. states that the new legislation does not apply to her domestic partnership with D.F. but does not explain what effect she believes this has. In any event, she is incorrect. Section 299.3 provides that the rights and obligations under the current legislation apply to domestic partners who registered before January 1, 2005, unless they validly terminated their domestic partnership before that date. (§ 299.3, subd. (a).) C.P. and D.F. did not terminate their partnership before January 1, 2005. D.F. does not contend that any rights conferred by section 297.5 apply to the issue of her right to shared custody of H. However, D.F.'s rights as a presumed parent do not depend on that legislation.

decision, resolving every conflict in favor of the judgment. [Citations.]' [Citation.]" (*Id.* at p. 369.)

Here, it was undisputed that C.P. and D.F. lived together in August 2004, when H. was born, and continued to do so until September 2006. Accordingly, there is no dispute that D.F. took H. into her home.

There is little evidence which was specifically directed toward establishing that D.F. held H. out as her daughter. Nevertheless, the evidence overwhelmingly establishes that D.F.'s relationship with H. was that of mother and child.

First, D.F. testified that she considered herself H.'s mother: "We're each her parent. So, as a result we're her mothers. She came into this world together [*sic*] because of a decision we made together. Together we are her parents, being female we are both mothers. I'm her mother, [appellant is] her mother, nobody else is the—her mother." She also testified that it did not matter to her that H. did not share her genes.

Second, D.F.'s testimony established that she was as involved in and as concerned about H.'s life and well-being as any parent would be, both before and after her separation from C.P. While they still lived together, D.F. cared for H. when C.P. was at work. She took H. to doctor appointments, sometimes with C.P. and sometimes without her. After the separation, she had regular visitation with H., including weekly visits lasting more than a day. At times, her work schedule made it difficult, but she arranged her life to the best of her ability in order to have time with H. She actively sought joint legal and physical custody and the ability to make joint decisions concerning H.'s

7

education and daycare. She also expressed concerns about minimizing or mitigating the disruptions in H.'s life resulting from the dissolution.

This evidence unquestionably supports the conclusion that D.F.'s relationship with H. was parental and that she "demonstrated an abiding commitment to the child and the child's well-being." (*E.C. v. J.V.*, *supra*, 202 Cal.App.4th at p. 1085.) Moreover, there was no evidence that supports the conclusion that D.F. was *not* a mother to H. Accordingly, substantial evidence supports the family law court's finding that D.F. is H.'s presumed parent.

2.

THE ORDER DENYING SPOUSAL SUPPORT WAS NOT AN

ABUSE OF DISCRETION

C.P. contends that the court's order terminating the right of both parties to spousal support must be reversed because neither the statement of decision nor the judgment reflects that the court considered all of the factors enumerated in section 4320, which a court must consider in connection with a support order.

D.F. contends that the doctrine of implied finding applies to this issue because C.P. failed to object to this omission from the statement of decision. She is correct.

When a court's statement of decision is ambiguous or omits the legal or factual basis for its ruling, a reviewing court is required to infer any factual findings necessary to support the judgment. This rule "'is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the

8

burden of providing an adequate record affirmatively proving error.' [Citation.]" (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494 [Fourth Dist., Div. Two].) A litigant may avoid the implied finding doctrine by bringing alleged deficiencies in the statement of decision to the attention of the trial court. A litigant who fails to do so waives the right to complain of such deficiencies on appeal, thereby allowing the appellate court to make implied findings in favor of the prevailing party. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1132.) The objecting party must bring the alleged deficiencies to the court's attention by means of a specific objection, i.e., one which pinpoints the deficiencies with sufficient particularity to allow the trial court to correct them. (*Ermoian v. Desert Hospital*, at p. 498.)

Here, with respect to the termination of spousal support, C.P.'s objection to the statement of decision states, "Petitioner objects to Page 5, lines 28 through [un-designated] [*sic*] concerning spousal support as failing to comply with established statutory and case authority requirements in the evaluation of support obligations between [the] parties." This is about as vague as an objection can be, and it is not sufficient to alert the court to the substance of C.P.'s objection. Had the objection stated straightforwardly that the statement of decision failed to address the factors enumerated in section 4320 and failed to state the evidence on which the court relied to determine that an award of spousal support to C.P. was not warranted, the court could easily have addressed it. Accordingly, C.P. has waived her right to assert that the omission of a statement of the factors the court relied on with respect to spousal support requires reversal of the order. Rather, we infer that the family law court weighed all of the

9

relevant section 4320 factors and made all findings of fact required under section 4320, and we must uphold the order unless we can find that it was an abuse of discretion.

As stated above, we presume that a judgment is correct, and it is the appellant's burden to demonstrate that it is not. (*Ermoian v. Desert Hospital*, *supra*, 152 Cal.App.4th at p. 494.) In her opening brief, CP does not explain why termination of spousal support was an abuse of discretion or why the court's implied findings are not supported by substantial evidence. She merely states that by failing to enunciate the factors it relied on and the factual basis for the order, the court committed reversible error. In her reply brief, she addresses the deficiencies she perceives in D.F.'s briefing on the issue, but does not explain why the court could not properly rely on the factors D.F. discusses. It is not our function to supply that analysis. (See *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409 [court is not required to conduct an independent search of the record to determine the sufficiency of the evidence].)

As D.F. points out, after considering C.P.'s objections to the statement of decision and D.F.'s response to the objections, the family law court adopted D.F.'s response and directed her to prepare a judgment in conformity with her response. In her response to C.P.'s objection with respect to spousal support, D.F. argued that based on the length of the domestic relationship, the length of the period since their separation and the ability of the parties to meet their own needs, an award of spousal support is inappropriate.

10

These are valid considerations under section 4320.[4]  And, although a family law

---

[4]  Section 4320 provides:  "In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) Documented evidence of any history of domestic violence, as defined in Section 6211, between the parties, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party.

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

"(l) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties.

"(m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325.

"(n) Any other factors the court determines are just and equitable."

court is required to consider and apply all relevant section 4320 factors, it has broad discretion as to the weight to accord to each such factor. As long as the court applies its discretion "'along legal lines, taking into consideration the applicable circumstances of the parties'" as set forth in section 4320 and fairly exercises the weighing process contemplated by section 4320, with the goal of accomplishing substantial justice for the parties in the case before it, the court cannot be said to have abused its discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304.)

Here, we cannot say that the court abused its discretion. There is a strong policy, reflected in section 4320, subdivision (*l*), that both partners should be expected to be self-supporting within a reasonable length of time. Although the court retains the discretion to order support for a greater or lesser length of time, it is generally reasonable to expect self-sufficiency within a period equal to one-half the length of the partnership. (*Ibid*.) The parties' domestic partnership lasted two years and two months. By the time judgment was entered, the parties had been separated for over four years. Both partners had stable employment with a law enforcement agency, and C.P. does not cite any evidence that she was unable to continue in her employment or that her salary was not sufficient to meet her needs, nor to any evidence which demonstrates that it was an abuse of discretion to determine that C.P. was fully self-supporting. There was no evidence of which we are aware as to any of the other section 4320 factors which compelled a finding that C.P. was entitled to spousal support. Accordingly, there was no abuse of discretion.

DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to D.F.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____

Acting P.J.

We concur:

KING _____
J.

CODRINGTON _____
J.

13