Filed 3/10/15  In re S.R. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re S. R., a Person Coming Under the Juvenile Court Law. | C076781 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY F.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD234199) |

Anthony F., (appellant) alleged father of minor S. R., appeals from the juvenile court's denial of his motion to be declared the minor's presumed father.  (Welf. & Inst. Code,[1] § 395; Fam. Code, § 7611, subd. (d) (§ 7611(d)).)  We affirm.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

On January 6, 2014, the Sacramento County Department of Health and Human Services (the department) filed a section 300 petition as to two-year-old minor S. R. and one-year-old minor C. F. (not involved in this appeal). The petition alleged: (1) D. F. (mother) had a history of domestic violence in the presence of the minors, most recently in December 2013, when appellant physically attacked and bit mother and was arrested for corporal injury to spouse or cohabitant and child endangerment. Mother had not obtained a restraining order or put a safety lock on her front door. (2) Mother had previously lost custody of a half sibling of the minors, and her parental rights had been terminated in December 2010.

The petition named Aaron Q. as S. R.'s alleged father. It also listed appellant as a person contacted and designated him simply as "[f]ather." His address differed from mother's address.

The initial hearing report named appellant as the presumed father of C. F. only. It named Aaron Q. as the alleged father of S. R.

The report stated that, according to the person who reported the matter to Child Protective Services (CPS) in December 2013, appellant had gone to prison just after S. R. was born, and S. R. was "not [his] child"; "the father of [S. R.] had her in his care."[2]

Mother stated that she was involved with two men around the time S. R. was conceived. She denied appellant's paternity of S. R. and thought Aaron Q. was more likely to be S. R.'s father. She claimed she "kicked [the appellant] out of the house about a month ago."[3] Mother also claimed that Aaron Q. had made threats toward her and S. R. and had no contact with S. R.

---

[2]     Presumably, the anonymous reporter meant that Aaron Q. was S. R.'s father, since the reporter had just denied that appellant was.

[3]     From the context, it appears that "the father" in this passage is appellant.

Appellant stated that he was incarcerated when S. R. was conceived. He married mother two months after she became pregnant with S. R. and was living with mother when S. R. was born. However, he was not present at the birth and his name was not on the birth certificate. He was not living with mother now, having separated from her two months ago. He intended to divorce mother and to request fifty-fifty custody of C. F.[4] He wanted S. R. to be in mother's care and had no concerns about mother's parenting. However, he considered S. R. his daughter, said she called him daddy, and wanted visitation with her.

At the initial hearing, the juvenile court provisionally found appellant to be the presumed father of C. F., but made no presumed-father finding as to S. R. The court ordered a paternity inquiry as to both minors.

The jurisdiction/disposition report recommended reunification services for appellant as to C. F. It said nothing about his relationship to S. R.[5]

Asked about his alleged domestic violence in December 2013, appellant stated that mother asked him to pick up C. F., but then would not let him take her. After he returned to mother's residence, an altercation broke out between mother and appellant. When he tried to take C. F. with him, mother physically tried to stop him, and he bit her wrist to get her to let go. S. R. was in the residence during the incident.

---

[4]   Appellant apparently did not say he would seek shared custody of S. R., as the report is silent on that point.

[5]   As to S. R.'s paternity, the report discussed only alleged father Aaron Q. It recommended denying him services because he had not contacted the department, had not been an active participant in S. R.'s life, and had no known relationship with her.

Mother stated that when appellant came over to get C. F., he started calling mother names and told S. R. to "shut the fuck up." (Appellant denied cursing S. R.) Mother also stated that when S. R. came to the door and called " 'Daddy' " to appellant, he responded: " 'I'm not your Daddy.' "

As part of appellant's probation following the December 2013 incident, the criminal court issued a criminal protective order.

Appellant stated that he married mother in December 2011. The relationship was "hit and miss," veering between love and hate. He did not know who S. R.'s father was because mother was sleeping with two men; he was incarcerated at the time of her birth.

Appellant wanted to have both minors in his care. At the present time he wanted them placed with the paternal great-grandmother or the paternal grandmother and paternal uncle. However, the paternal grandmother and the paternal great-grandmother had stated they were not biologically related to S. R.

S. R. was placed in a foster home where she was doing well. Appellant had been given a contact number to arrange for visitation with both minors.

An addendum report stated that appellant had had visitation with the minors and was conducting himself appropriately.

At the contested jurisdiction/disposition hearing, held March 20, 2014, appellant's counsel stated that he intended to file a motion to determine paternity as to S. R. The juvenile court found that alleged father Aaron Q.'s paternity had not been established and that the department had exercised due diligence to locate anyone claiming to be S. R.'s father. The court denied reunification services to mother because she had failed to reunify with the minors' half sibling and her parental rights over the half sibling were terminated, and she had not made a reasonable effort to treat the problem that led to the half sibling's removal. The court declared S. R. adoptable and set a section 366.26 hearing for July 17, 2014 as to her.

Appellant's counsel requested that the juvenile court order visitation for appellant with S. R., noting that he was already visiting her. The court replied that appellant had no standing as to S. R.

After the department joined in appellant's request, the court responded: "I'm not inclined to make an order now that [S. R.] will be having a visit with a man, because I hear that he may or may not file a motion that may or may not be granted at some point in the future. This child was detained two months ago. We are all aware that at this point in time she is fatherless. [¶] So I'll allow the Department to have monthly visitation between [S. R.] and [appellant]. But I don't think I can otherwise find based on the record that's in front of me that pursuing a relationship is beneficial to [S. R.]"

On April 14, 2014, appellant filed a motion to establish paternity. (§ 7611(d).) He declared that he had lived with S. R. almost all her life and held her out openly as his child; he was the only father she knew. Appellant asserted that alleged father Aaron Q. had come forward on March 6, 2014, and requested paternity testing, but should not be found S. R.'s presumed father because he had played no role in S. R.'s life.

The juvenile court set appellant's motion for hearing on May 8, 2014.

On May 7, 2014, the department recommended that the juvenile court deny the motion because appellant had not consistently held out S. R. as his child, but had told her he was not her father; he had consistently tried to take custody of C. F. from mother, but had never sought to do so as to S. R.; and finding him to be S. R.'s presumed father would not be in the child's best interest.

At the hearing on appellant's motion, which was also set to address relative placement as to both minors and the section 366.26 status report as to S. R., the department recommended against relative placement for S. R. because she was on track for adoption.

5

Arguing against appellant's motion, the department argued that he had lived with S. R. only as a "stepfather" and did not seek to take her into his home after the breakup with mother (unlike C. F.). There was conflicting evidence about whether appellant ever told S. R. he was her father, but mother's statement that he told S. R. the opposite was made when no paternity issue had arisen and the parents were arguing only about the custody of C. F.; therefore mother had no apparent reason to lie on this subject. Finally, presumed fatherhood would not be in S. R.'s best interest because she and C. F. did not get along well, and if appellant obtained custody of both siblings, it might create an unfortunate situation.

S. R.'s counsel submitted on the issue, but disagreed with the department that the tension between the siblings was relevant.

Appellant's counsel argued that even if appellant went to mother's house and did not try to take S. R., that was "a one-time thing." He had requested visitation with S. R. since then. S. R. was born while mother resided in the home with appellant, and it was mother, not appellant, who had moved out; therefore, S. R. had resided with him "at a minimum." He treated her as his child; she and C. F. were "a package deal as far as he is concerned." Although incarcerated briefly around the time of S. R.'s birth, he had returned and lived with her, treated her as his own, and held her out as his own.

Mother's counsel submitted on the issue, noting that "although mother does not agree with all the information, she does agree that [appellant] has acted as a father figure to [S. R.]"

The juvenile court denied appellant's motion, reasoning as follows:

"I think the case law makes it clear that a presumed father is someone who acts like a child's father in a prompt and expeditious manner. One of the facts that the Court really can't ignore in this case is CPS became involved with the family in December of 2013. At that time, there was very clearly issues surrounding whether or not [appellant]

6

was the father of [S. R.] At no time . . . did [appellant] seek to establish paternity, request a status until . . . this motion was filed in April.

"So notwithstanding the fact that the case came into the system in January where the Court ultimately ended up setting a [s]election and [i]mplementation [h]earing to consider a plan of adoption for [S. R.], his motion was very, very late in getting before the Court.

"And I do think the evidence is somewhat controverted in the social worker's reports. But I do agree with the argument and assessment of [the department] that the mother's statements have a certain level of sincerity and credibility given that there were no apparent motivations for her to lie at that point in time. CPS has also received reports from other reporters who seem to very clearly indicate that there were periods of time when the [appellant] had [C. F.] but not [S. R.] There is at least one report that the father of two-year-old [S. R.] [i.e., Aaron Q.] had her in his care.

"So there are certainly evidence [*sic*] contrary to the assertions of [appellant] and his motion that [Aaron Q.] has been lacking in a relationship. And I also agree with the argument of [the department] that some of -- in determining paternity really is best interest standard. And given the disparate conduct as it relates to the two children, I do think the evidence shows that [appellant] acted as a stepparent and not as the child's father and has not continuously and timely asserted himself in that regard. So that motion is denied."

DISCUSSION

Appellant contends the juvenile court's ruling on his motion was reversible error. We disagree.

A man who is not a child's biological father, is not married to the child's biological mother, and has not attempted to marry her, is presumed to be the natural father if he "receives the child into his home and openly holds out the child as his natural child." ( *In re Nicholas H.* (2002) 28 Cal.4th 56, 58; § 7611(d).) A presumed parent

7

under section 7611(d) is someone who has "demonstrated an abiding commitment to the child and the child's well-being, regardless of his or her relationship with the child's other parent." (*E.C. v. J.V.* (2012) 202 Cal.App.4th 1076, 1085.)  Since appellant sought presumed father status only under section 7611(d), we consider only whether he met his burden under that provision.

"A man who claims entitlement to presumed father status has the burden of establishing by a preponderance of the evidence the facts supporting his entitlement." (*In re J.O.* (2009) 178 Cal.App.4th 139, 147.)  We review the juvenile court's factual findings as to section 7611(d) under the substantial evidence standard, considering the evidence in the light most favorable to the prevailing party, including the reasonable inferences from the evidence, and not reweighing conflicts or disputes in the evidence.  If there is any substantial evidence, contradicted or uncontradicted, in support of the court's ruling, and the ruling is not based on the application of improper criteria or incorrect legal assumptions, we must affirm.  (*E.C. v. J.V.*, *supra*, 202 Cal.App.4th at p. 1084.)[6]

An alleged father cannot satisfy section 7611(d) by "constructively" receiving a child into his home, but only by doing so physically.  (*Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1051; see *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 825-830.)  However, an alleged father's failure to do so may be excused if he sought to do so but was frustrated by circumstances beyond his control.  (*In re Andrew L.* (2004)

---

[6]    Appellant asserts in his reply brief:  "Respondent has failed to demonstrate that substantial evidence supports the trial court's rulings, mandating reversal of the order denying [appellant]'s motion to establish paternity or presumed father status."  This framing of the issue misstates the burden of persuasion on appeal.  The burden is *always* on the appellant to demonstrate reversible error.  If the appellant fails to do so, we must affirm regardless of what the respondent has "demonstrate[d]" -- and even if the respondent has failed to file a brief.  (Cf. Cal. Rules of Court, rule 8.220(a)(2); *Estate of Palmer* (1956) 145 Cal.App.2d 428, 431.)

122 Cal.App.4th 178, 191; *In re Jerry P.* (2002) 95 Cal.App.4th 793, 807; see *Kelsey S.*, at p. 825.)

What matters is whether the alleged father has " 'promptly come[] forward and demonstrate[d] a full commitment to his parental responsibilities--emotional, financial, and otherwise . . . .' (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849; [accord], [*In re*] *Zachariah D.* [(1993)] 6 Cal.4th [435,] 490.) The focus is on whether the natural father 'has done all that he could reasonably do *under the circumstances*' to demonstrate his commitment to the child. (*Kelsey S.*, *supra*, at p. 850; see also [*In re*] *Julia U.* [(1998)] 64 Cal.App.4th [532,] 541.)" (*In re Andrew L*, *supra*, 122 Cal.App.4th at p. 191.)

The juvenile court found appellant did not meet the standards of section 7611(d) because he did not show by a preponderance of the evidence that he had consistently sought to receive S. R. into his home or to hold her out as his own. Viewing the evidence most favorably to those findings, substantial evidence shows that in December 2013 appellant tried to take C. F. from mother but not S. R., and when S. R. called him "Daddy" he answered: "I'm not your Daddy." Furthermore, appellant told the social worker that in divorce proceedings he would seek a court order for shared custody of C. F., but said nothing about seeking shared custody of S. R.; on the contrary, he was happy to leave S. R. in mother's custody and had no concerns about mother's parenting of her--despite mother's ongoing substance abuse problem and loss of parental rights over a half sibling, which led the juvenile court to deny mother services and fast-track S. R. toward adoption. The fact that appellant sought visitation with S. R. proved no more than that he related to her as a "stepparent," as the juvenile court put it. So far as the evidence conflicted, we cannot reweigh the juvenile court's resolution of those conflicts.

Appellant's opening brief omits citation to the record for most of the alleged factual statements in his "Discussion." This court has long refused to consider arguments made without citation to the record to support each alleged fact *at the point where it is asserted*, even if the same fact is alleged with record citation elsewhere in the party's

9

brief. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 & fn. 16.) Rule 8.204(a)(1)(C) of the California Rules of Court, which requires record citation for factual assertions, is intended "to enable appellate justices and staff attorneys to locate relevant portions of the record expeditiously without thumbing through and rereading earlier portions of a brief." (*City of Lincoln*, at p. 1239, fn. 16.) To provide record citation for alleged facts at some points in a brief, but not at others, frustrates the purpose of that rule. (*Ibid.*) Consistent with our longstanding practice, we decline to consider any factual assertion in appellant's "Discussion" unsupported by record citation at the point where it is asserted.[7]

Subtracting unsupported factual claims, all that remains of appellant's argument is a citation to an unrelated case in which the appellate court held that a stepfather had proved his entitlement to be named the presumed father. (*In re D.S.* (2014) 230 Cal.App.4th 1238.) Since the facts of that case (contrary to appellant's assertion) are not "similar in many ways to the instant case" -- at least not when the facts of our case are viewed most favorably to the juvenile court's findings, as we must view them -- *In re D.S.* does not assist appellant.

---

[7] But if we were to consider appellant's factual assertions, we would conclude that they almost all misstate the evidence or construe it most favorably to himself, contrary to the well-settled standards of substantial evidence review. Thus, for instance, appellant claims: "[N]o evidence was presented by the Department to contradict the evidence presented to the court in its own reports that appellant did hold the child out as his own child." This claim is frivolous.

As we have shown, the juvenile court considered the evidence presented by the department in its reports that mother said appellant told S. R., "I'm not your Daddy," and concluded mother's statement was credible despite conflicting evidence, for reasons the juvenile court explained clearly on the record. Appellant's bald assertion that mother's statements to the department were all "misrepresentations," which disregards the juvenile court's resolution of evidentiary conflicts, is not cognizable on substantial evidence review.

## DISPOSITION

The order denying appellant's motion for presumed father status is affirmed.


      ROBIE      , Acting P. J.


We concur:


      MURRAY      , J.


      HOCH      , J.