Filed 11/7/24  In re A.L. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083244 |
| Plaintiff and Respondent, | (Super.Ct.No. J-294238) |
| v. | OPINION |
| C.L. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Tracy M. De Soto, under appointment by the Court of Appeal, for Defendant and Appellant C.L.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant R.L.

1

Tom Bunton, County Counsel, and Pamela J. Walls, Special Counsel, for Plaintiff and Respondent.

## I.  INTRODUCTION

Defendant and appellant R. L. (Father) appeals from the February 14, 2024 orders terminating parental rights to his child, A.L., and selecting adoption as A.L.'s permanent plan.  (Welf. & Inst. Code, § 366.26.[1])  Father does not challenge the section 366. 26 orders.  Instead, Father challenges the sufficiency of the evidence supporting the court's November 30, 2022 jurisdictional findings pertaining to Father (§ 300, subds. (b)(1), (g)), and the disposition order denying Father reunification services on the grounds Father is A.L.'s "mere" biological father, not presumed father, and reunification services for Father would not serve A.L.'s best interest (§ 361.5, subd. (b)).

As an initial matter, Father claims he has shown good cause for not timely appealing the November 30, 2022 dispositional orders:  he was not given *written notice* of his right to appeal the orders; nor was he given written notice of his right to petition for an extraordinary writ, challenging the October 17, 2023 order setting the section 366.26 hearing.  (Cal. Rules of Court, rule 5.590(a), (b).[2])  A.L.'s mother, C.L. (Mother), also appeals from the section 366.26 orders.  Mother joins Father's claims, but Mother raises no claims independent of Father's claims.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

[2]  Undesignated references to rules are to the California Rules of Court.

2

We conclude Father has not shown good cause to be excused from his failure to timely appeal the November 30, 2022 disposition orders. Nonetheless, we address Father's claims and conclude they lack merit. Thus, we affirm the November 30, 2022 jurisdictional findings and dispositional orders, and the section 366.26 orders.

## II. BACKGROUND

A. *Events Preceding A.L.'s Dependency*

A.L. was born in November 2021. On August 27, 2022, Mother was pulled over while towing a stolen trailer, with three adult males and nine-month-old A.L. in Mother's car. Upon a search of the car, officers found methamphetamine in a " 'baggie' " about six inches from where A.L. was "sitting." A "meth pipe" was also found "in" A.L.'s car seat, and A.L. was "lying on top of" the car seat. There were "dirty and soiled diapers in the car," and "all the baby bottles in the car contained old/stale milk." Mother was arrested and jailed for stealing a vehicle, possession of a stolen vehicle, conspiracy, and child endangerment. Mother had a criminal history that included grand theft and methamphetamine possession.

Since June 2022, Father had been incarcerated in Wasco State Prison. Father had a criminal history of buying or receiving a stolen vehicle in March 2021; inflicting corporal injury on a spouse or cohabitant and battery of a spouse in May and August 2021; assault with a deadly weapon in March 2022; and inflicting corporal injury on a spouse or cohabitant in May and June 2022.

At the time of her August 27, 2022 arrest, Mother arranged to have A.L. picked up by the child's maternal grandmother (the MGM). Mother had four older children, ages

3

seven to 16, by two other fathers, and the older children were already staying with the MGM for the weekend.

On August 27 and 28, 2022, a social worker from respondent San Bernardino County Children and Family Services (CFS) spoke with Mother, the MGM, and A.L.'s paternal grandfather (the PGF). The MGM reported she knew of Mother's "past substances use" but had no knowledge of Mother's current use. The MGM said Mother and the children were "residing in a trailer somewhere in Victorville." Mother reported the children's fathers had not been involved in the children's lives; there were no family law orders for the children; Father was incarcerated; and Mother did not know the other fathers' whereabouts. The PGF said he worked full time; thus, he was unable to assist with the children, and he did not know Father's whereabouts.

CFS did not deem the MGM suitable for the children's emergency placement, as the MGM did not own a vehicle or drive, and no one was available to assist the MGM in transporting the children to and from visits, medical appointments, and school. On August 27, 2022, a detention warrant was issued, authorizing CFS to detain the children from the MGM. On August 28, the MGM would not answer her door when a social worker and a police officer attempted to serve the warrant. On August 29, the MGM texted the social worker that she would bring the children to the August 31 detention hearing.

B. *Petition and Detention*

On August 30, 2022, CFS filed a petition alleging juvenile court jurisdiction over A.L. pursuant to section 300, subdivisions (b) [failure to protect] and (g) [no provision

4

for support].  As to Mother, the petition alleged Mother had a substance abuse problem that impaired her ability to protect A.L. (the b-1 allegation), and Mother left A.L. without provisions for care and support when Mother was arrested on August 27 (the b-3 and g-5 allegations).  As to Father, the petition alleged Father "knew or should have known" of Mother's "substance abuse issues and failed to protect" A.L., placing A.L. "at significant risk of future abuse and neglect" (the b-2 allegation), and Father left A.L. without provisions for care and support, in that, around June 8, 2022, Father was "detained" in Wasco State Prison, and Father could not "arrange for the care and custody of [A.L.]" during his incarceration" (the b-4 and g-6 allegations).

CFS's August 31, 2022 detention report included an address and phone number for Father in Wasco State Prison, with Father's booking number.  The detention report states that the social worker attempted to contact the children's three alleged fathers, including Father, "by asking relatives regarding their whereabouts."  But the report does not indicate that anyone from CFS contacted or attempted to contact Father in Wasco State Prison before the August 31 detention hearing.

At the detention hearing on August 31, 2022, the parents were not present but were represented by counsel.  Father's counsel requested, and the court ordered, a paternity test for Father and A.L.[3]  The court found there was a prima facie case for jurisdiction and ordered A.L. and the older children detained.  The MGM was present and requested placement.  The court advised the MGM that her home would be assessed for

---

[3] On September 7, 2022, the court signed an order for the paternity test.

5

placement, but A.L. and three of Mother's older children were taken into custody at the detention hearing.[4] The court authorized supervised visits between A.L. and Father. The jurisdiction and disposition hearing was scheduled for October 3, 2022.

C. *Jurisdiction and Disposition*

At the original jurisdiction and disposition hearing on October 3, 2022, Father was present. The court continued the hearing to October 27 because Father's paternity testing had not been completed due to an error in Father's last name on the court's September 7 paternity testing order. Counsel for Father pointed out that Father wanted the paternity test "to elevate his status" from an alleged Father. Father said he wanted to "waive future transport" to the hearings because being transported adversely affected his "time served."

In an interview for CFS's October 3, 2022 jurisdiction and disposition report, Mother said she and the children lived with Father in Riverside for approximately one year, before Father was incarcerated. Mother also said that Father "financially provided" for the family, and Mother received "food stamps." Prior to living with Father, Mother said she was incarcerated for two years, beginning in 2019, and during this time her older children lived with the MGM in Mexico.

In the interview, Mother denied she had a substance abuse problem. Mother said she first used methamphetamine when she was 27 years old; she last used the drug in 2020; and she had never received or refused treatment for a " 'drug problem.' "[5] Mother

---

[4] An apprehension warrant was issued for Mother's oldest child, whose whereabouts were unknown.

[5] Mother was 27 years old in 2018.

6

also denied that the methamphetamine and paraphernalia found in her car when she was arrested belonged to her; she said her friend left the items in her car. Mother said she did not know the trailer she was towing, as a " 'favor for a friend,' " was stolen.

A.L. and three of the older children were initially placed in the same foster home.[6] One of the older children confirmed that the family lived with Father in Riverside for around one year before Father was incarcerated. In its October 3, 2022 jurisdiction and disposition report, CFS noted it had "not made contact with" Father, who remained A.L.'s alleged father. Father did not attempt to contact CFS about visiting A.L. or for any information about A.L. CFS notified Father of the jurisdiction and disposition hearing by certified mail.

The jurisdiction and disposition hearing was continued from October 27 to November 30, 2022 because the paternity testing still had not been completed. On November 22, CFS reported that paternity test results showed Father was A.L.'s biological father. Mother tested positive for ethanol (alcohol) and amphetamines on October 12, and positive for ethanol on October 28. Mother did not appear for a drug test on November 8.

At the continued hearing on November 30, 2022, Father was not present. The court admitted CFS's detention report, jurisdiction and disposition report, and addendum reports into evidence. No other evidence was offered. The court dismissed the b-3 and g-5 allegations against Mother, without objection, because Mother was no longer in

---

[6] The whereabouts of Mother's oldest child remained unknown.

custody. The court sustained the other allegations of the petition, declared A.L. a dependent, ordered A.L. removed from parental custody, and authorized reunification services for Mother but denied reunification services for Father. The court found Father was A.L.'s "mere biological father," and it would not be in A.L.'s best interests to offer Father services "based on his lack of contact with the child and his custodial status."

D. *The Review Hearings and Setting Hearing*

During the six-month review period, through May 30, 2023, Mother did not participate in her case plan. Mother attended one individual therapy session, and was terminated for lack of attendance. Mother also failed to complete a parenting program, domestic violence program, and outpatient program. In April 2023, Mother was arrested, charged, and jailed for several days for stealing a car. On April 23 and 25, Mother tested positive for methamphetamines.

On May 12, 2023, the children were removed from their foster home due to safety concerns. A.L. was placed in a new foster home, separate from her three older siblings. Mother continued to visit the children; her visits were inconsistent, but there were no concerns, and the children enjoyed the visits. Father remained incarcerated in Wasco State Prison, with an unknown release date. On May 30, the court continued Mother's services for six months. Minor's counsel said she would have asked the court to terminate Mother's services, if the children had not recently been moved to new placements. The court said it thought there was "a good basis to terminate" Mother's services.

In the 12-month review report, filed October 13, 2023, CFS reported Mother had an open dependency case in Riverside County for the children's younger half-sibling who was detained in March 2023 pursuant to subdivisions (a), (b), and (g) of section 300. The report also stated that Mother called the social worker on September 29, saying she was in jail in Riverside County. In an October 4 interview in jail with the social worker, Mother said she had been in jail for two and one-half months based on her "last criminal charge." Mother did not have a release date. CFS had been unable to contact or locate Mother during her incarceration.

When asked about Father, Mother said Father was in a sober living home in Palm Springs. Mother said she wanted to transition from jail to the sober living home with Father. The social worker called the sober living facility, which confirmed, on October 9, that Father arrived at the facility from state prison on October 2. Father had since had two negative drug tests at the facility. In addition, CFS's October 8 search of the state prison system's "inmate locator," using Father's booking number, did not show Father was incarcerated at Wasco State Prison. On October 10, the social worker obtained a phone number for Father from a family member. The social worker called the number for Father, but no one answered, and the worker was unable to leave a message.

As of October 17, Mother had not completed any part of her case plan. Thus, CFS recommended the court terminate Mother's services and set a section 366.26 hearing, with the goal of a permanent plan of adoption for all the children. At the 12-month review hearing on October 17, 2022, the court terminated Mother's reunification services and set a section 366.26 hearing for A.L. Neither parent was present. Father's counsel

9

objected to setting the hearing for A.L., and asked that CFS "work with" Father to arrange visits between Father and A.L. Counsel said a social worker had "reached out" to Father, but visits had not been arranged.

E. *The Section 366.26 Hearing*

At the section 366.26 hearing on February 14, 2024, CFS recommended the court terminate parental rights and place A.L. for adoption. A.L., then age two, and had been living with her caretakers since May 2023, and they were willing to adopt her. A.L. had had five visits with each parent since November 2023, but showed no emotional attachment to either parent during the visits.

Each parent objected to terminating parental rights, claiming the parental benefit exception applied, and both parents testified. Father testified A.L. was four or five months old when Father became incarcerated and, before that time, Father had lived with A.L. Father had been visiting A.L. as often as he could since his October 2023 release from state prison; during visits, A.L. was excited to see Father and called Father "Papi." Mother testified she also visited A.L. as often as possible, and A.L. would run to Mother, say " 'mommy,' " and hug Mother.

The court found the parental benefit exception did not apply because neither parent showed its requirements were satisfied. (§ 366.26, subd. (c)(1)(B)(i), *In re Caden C.* (2021) 11 Cal.5th 614, 636-637.) Among other things, A.L. did not have a "substantial, positive, emotional attachment" to either parent. (*In re Caden C.*, at p. 636.) The court terminated parental rights and selected adoption as A.L.'s permanent plan.

10

## III. DISCUSSION

A. *Father Has Not Shown Good Cause To Excuse His Failure To Timely Appeal the November 30, 2022 Disposition Orders*

Father claims he has shown good cause to be excused from his failure to appeal from the November 30, 2022 disposition orders, and for this court to consider his challenges to the disposition orders, in this appeal from the February 14, 2024 section 366.26 orders. We conclude Father has not shown good cause.

### 1. Legal Principles

Appeals in dependency case appeals are governed by section 395, which provides in relevant part: "A judgment in a proceeding under [s]ection 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a); *In re A.A.* (2016) 243 Cal.App.4th 1220, 1234 (*A.A.*).) Under section 395, the disposition order in a dependency proceeding is the appealable judgment, and all subsequent orders are directly appealable as postjudgment orders. (*A.A.*, at p 1234.) In an appeal from a disposition order, the appellant may challenge the jurisdiction findings underlying the disposition order declaring the child a dependent, and any other findings or orders made before or at the time of disposition. (*In re B.P.* (2020) 49 Cal.App.5th 886, 890.)

But an unappealed disposition or postdisposition order " ' "is final and binding and may not be attacked on an appeal from a later appealable order." [Citation.] This "waiver [or forfeiture] rule" holds "that an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order," even when the issues

11

raised involve important constitutional and statutory rights.' " (*A.A.*, *supra*, 243 Cal.App.4th at p. 1234; *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018 ["An appeal from the most recent order in a dependency matter may not challenge earlier orders for which the time for filing an appeal has passed. [Citation.] 'Permitting a parent to raise issues going to the validity of a final earlier appealable order would directly undermine dominant concerns of finality and reasonable expedition,' including 'the predominant interest of the child and state . . . .' "].)

The forfeiture rule does not apply, however, if a parent is not advised of the parent's right to appeal a disposition order, in accordance with rule 5.590(a). (*A.A.*, *supra*, 243 Cal.App.4th at p. 1235.) The failure to notify a parent of the parent's right to appeal the disposition order is "good cause" to excuse the parent's failure to timely appeal the disposition order, and to consider the parent's challenges to the disposition order in a subsequent order. (*Ibid*.) That is, the failure to " 'provide the appeal advisement' " is a " ' " 'special circumstance' " ' " constituting " ' " 'an excuse' " ' " for the parent's failure to timely appeal the disposition order. (*Ibid.*)

2. Notice of Father's Appeal Rights from the Disposition Orders

Father claims there is good cause to excuse his failure to appeal the November 30, 2022 disposition orders because the record does not show that Father was given notice of his right to appeal the disposition orders, in accordance with rule 5.590(a). We find no merit to this claim.

Rule 5.590(a) provides: "If at a contested hearing on an issue of fact or law the court finds that the child is described by . . . section 300 . . . , the court after making its

12

disposition order . . . must advise, orally or in writing, the child, if of sufficient age, and the parent . . . of:  [¶] (1) The right of the . . . parent . . . to appeal from the court order if there is a right to appeal; . . . [¶] . . . If the parent  . . . is not present at the hearing, the advisement must be made by the clerk of the court by first-class mail to the last known address of the party or by electronic service in accordance with section 212.5."

Because Father was not present at the November 30, 2022 disposition hearing, the court was required to direct the clerk of court to give Father *written notice*, by first class mail to Father's last known address or by electronic service, of Father's right to appeal the disposition orders.  (Rule 5.590(a); § 212.5.)  The record is silent on whether Father was given either form of written notice.  When the record is silent on whether an official duty was performed, and " 'the invalidity' " or failure to perform the duty " 'does not appear on the face of the record,' " we presume the duty was properly performed.  (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 575 (*Elena S.*); Evid. Code, § 664.)

Here, it is appropriate to presume that Father was given written notice of his right to appeal the disposition orders, as required by rule 5.590(a).  The record is silent on whether Father was given this written notice, and the record reveals no reason to conclude the notice was not given.  (*Elena S.*, *supra*, 247 Cal.App.4th at p. 575.)  To the contrary, the record shows that, at the time of the November 30, 2022 disposition hearing, (1) Father was incarcerated in Wasco State Prison, and (2) the court had been in possession of Father's state prison address and booking number, since the detention

report containing the information was filed on August 31, 2022.[7]  Thus, the record is consistent with the written notice having been given.  Thus, Father has not shown good cause to excuse his failure to timely appeal the disposition orders, on the ground he was not given written notice of his right to appeal the orders.  (Rule 5.590(a).)[8]

   3.  <u>Notice of Father's "Writ Rights" from the Setting Order</u>

Father claims there is a second reason to find good cause to excuse Father's failure to appeal from the November 30, 2022 disposition orders:  Father was not given notice of his right to petition for extraordinary writ relief from the October 17, 2023 order setting the section 366.26 hearing.  (§ 366.26, subd (l); rule 5.590(b).)  We also find no merit to this claim.

---

   **7**  The record does not show whether Father ever filed Judicial Council form JV-140 [notification of mailing address].  (See *A.A.*, *supra*, 243 Cal.App.4th at pp. 1242-1243 & fn. 8; § 316.1.)

   **8**  Relying on *A.A., supra*, 243 Cal.App.4th at page 1238, CFS argues that, "under the plain language" of rule 5.590(a), "the court is not required to provide appeal advisements to parents who are not present at the hearing."  CFS is mistaken.  Its argument is based on a former version of rule 5.590(a), at issue in *A.A.*, which required the court to provide written notice of appeal rights of a disposition order "to 'the child, if of sufficient age, and, *if present* the parent or guardian.' "  (*A.A.*, at p. 1236.)  Thus, under former rule 5.590(a), the court was not required to give a parent written notice of appeal rights unless the parent was present at the hearing.  (See *A.A.*, at pp. 1236-1238.)  Rule 5.590(a) was amended, effective January 1, 2020, to eliminate the "if present" language, and to add the requirement that the written notice of the appeal rights be given to a parent or guardian,"[i]f the parent or guardian is not present at the hearing."  (Historical Notes, 23 pt. 2 West's Ann. Court Rules (2017 ed. & 2024 Supp.) foll. rule 5.590, p. 254.)  In *A.A.*, this court held that, under former rule 5.590(a), the juvenile court was not required to advise the mother of her right to appeal the disposition orders because the mother was not present at the disposition hearing.  (*A.A.*, at pp. 1236-1239 & fn.7.)  In contrast, under current rule 5.590(a), a parent is entitled to *written notice* of the parent's right to appeal the disposition orders if the parent is not present at the disposition hearing.

Notice of the right to petition for writ relief from a setting order "must be given orally to those present when the court orders the hearing under section 366.26." (Rule 5.590(b)(1).) If "a party" is not present for the setting hearing, "within 24 hours of the hearing, the advisement must be made by the clerk of the court by first-class mail to the last known address of the party or by electronic service in accordance with section 212.5." (Rule 5.590(b)(2).) "If the notice is for a hearing at which the social worker will recommend the termination of parental rights, the notice may be electronically served in accordance with section 212.5, but only in addition to service of the notice by first-class mail." (*Ibid.*) The written notice must include (1) the time for filing a notice of intent to file a writ petition, and (2) copies of the Judicial Council writ petition and record request forms. (Rule 5.590(b)(3), (4).)

Although Father was not present at the setting hearing, the court was required to give Father written notice of his right to challenge the setting order by writ petition. (Rule 5.590(b).) In seeking the section 366.26 hearing, CFS was asking the court to terminate parental rights to A.L. Thus, under rule 5.590(b)(2), the court clerk was required to give Father written notice of his right to challenge the setting order by writ petition, by first class mail, at Father's "last known address." (Rule 5.590(b)(2).) Electronic service alone would have been insufficient. (*Ibid.*)

On October 17, 2023, the "last known address" the court had on file for Father was Father's Wasco State Prison address. But the court knew, at the time of the October 17, 2023 12-month review and setting hearing that Father was no longer incarcerated and had been released, on October 2, to the sober living facility in Palm Springs. This

15

information was included in the 12-month review report, filed October 13. Also, Father's counsel told the court that CFS had "reached out" to Father" and asked that CFS help arrange visits for Father, indicating it was understood, at the hearing, that Father was no longer incarcerated.

Father claims *he did not receive* written notice of his "writ rights" (rule 5.590(b)) because "the sender omitted [Father's] booking number." Father notes that the proof of service for the notice of writ rights includes the notation, "address incomplete/no BK #" beneath Father's name, and argues this indicates the notice was not mailed to Father. As Father points out, the court obtained Father's booking number and complete state prison address when the detention report was filed on August 31, 2022.

We agree the notice was defective. It is appropriate to presume that written notice of Father's writ rights *was mailed* to Father's "last known address" in Wasco State Prison (Rule 5.590(b)(2).) But the record shows Father is *not likely to have received* the notice, both because (1) the notice omitted Father's booking number, and (2) Father was released from prison over two weeks before the notice was (or would have been) mailed.

In *A.A.*, this court held that, when notice of a parent's writ rights is given to the parent's last known address, in accordance with section 316.1, the notice does not comply with rule 5.590(b)(2) if, at the time the notice is given, the court *knows* the parent is no longer at the parent's last known address, and the parent is therefore unlikely to receive the notice of the parent writ rights at the last known address. (*A.A.*, *supra*, 243 Cal.App.4th at pp. 1242-1243; § 316.1.) These conditions are present here. When the court issued the setting order on October 17, 2023, the court knew Father had been

16

released from Wasco State Prison to the sober living facility in Palm Springs, on October 2. Thus, the written notice of Father's "writ rights" was defective; it did not comply with Rule 5.590(b)(2).)

But the defective written notice of Father's writ rights, from the October 17, 2023 setting order, does not entitle Father to challenge the earlier and then-final November 30, 2022 disposition orders; rather, the error only allows Father to raise, and this court to consider, issues relating to the setting order. (*A.A.*, *supra*, 243 Cal.App.4th at p. 1235; *In re A.H.* (2013) 218 Cal.App.4th 337, 350-351.) The November 30, 2022 disposition orders had been final more than one year when the setting order was issued on October 17, 2023. (See rule 8.406(a).) The defective notice of Father's right to challenge the setting order did not *revive* Father's right to challenge the earlier and final disposition orders. (See *A.A.*, at pp. 1226-1227, 1235, 1239-1245.) Father forfeited that right when the time for appealing the disposition orders expired. Only a defective notice of the disposition orders, which Father has not shown, would allow Father to challenge the disposition orders in this appeal from the section 366.26 orders.

Father's reliance on *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662 (*Maggie S.*) is misplaced. There, the court excused the mother's failure to file an extraordinary writ petition from the setting order, which was made concurrently with the jurisdictional findings and dispositional orders, because the mother was not orally advised of her writ rights at the setting hearing. (*Id.* at pp. 671-672.) In considering Mother's writ petition, the court considered the merits of mother's challenges to the jurisdictional findings and disposition order, because those findings and orders were

17

made contemporaneously with the setting order.  (*Id*. at pp. 672-674; rule 8.450.)  That is not the case here.  The jurisdictional findings and dispositional orders were final, and no longer appealable, at the time of the setting order.

CFS posits another ground for finding Father had not shown good cause for failing to appeal the November 30, 2022 disposition orders:  this court has no jurisdiction to consider Father's challenges to the disposition orders, because neither parent's notice of appeal "makes any mention of the orders/judgments made at the jurisdiction/disposition hearing . . . ."  Each parent's notice of appeal was filed February 14, 2024, the date of the section 366.26 hearing; but in each notice the space for identifying the findings and orders appealed from is left blank.

As CFS points out, courts must liberally construe a notice of appeal in favor of its sufficiency (*In re J.F.* (2019) 39 Cal.App.5th 70, 75), but the rule of liberal construction does not extend to viewing an appeal from one order as an appeal from a " 'further and different order,' " and " 'a notice of appeal will not be considered adequate it if completely omits any reference to the judgment being appealed' " (*Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 225).  But CFS concedes the notices "clearly and unmistakably indicate that the parents challenge only the termination of the parental rights on February 14, 2024."  A notice of appeal is to be " ' "liberally construed so as to protect the right to appeal if it is *reasonably clear* what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." ' " (*In re J.F.,* at p. 75.)  As CFS concedes, it is "unmistakably" clear that

18

the parents were appealing from the section 366.26 orders, given that the notices of appeal were signed and filed on the day those orders were made.

    4.  <u>Conclusion</u>

    Given that Father's notice of appeal is from the section 366.26 orders, the question is whether Father has shown good cause to be excused from his failure to previously appeal from the earlier and final disposition orders, and for this court to consider his challenges to the disposition orders in this appeal from the section 366.26 orders. As explained, Father has not made this showing. Thus, this court lacks jurisdiction to consider Father's challenges to the disposition orders and jurisdictional findings. (*In re J.F.*, *supra*, 39 Cal.App.5th at p. 74.)

    Nonetheless, in order to forestall a "potential claim" that Father's counsel rendered ineffective assistance in failing to timely appeal the disposition orders, we consider the merits of Father's claims. (See *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court has discretion to consider forfeited claims in order to forestall ineffective assistance of counsel claims]; *In re S.D.* (2002) 99 Cal.App.4th 1068, 1077, 1079-1082 [A parent may raise an ineffective assistance of counsel claim based counsel's failure to object to a jurisdictional finding, from and "even after" the section 366.36 order terminating parental rights, "in the rare case where the appellate record demonstrates 'there simply could be no satisfactory explanation' for counsel's action or inaction " and due process requires the court to consider the claim.].)

19

B. *Even if Father's Claims Are Moot, We Exercise Our Discretion To Consider Them*

Father claims this court should exercise its discretion to review the jurisdictional findings pertaining to Father, namely, the b-2, b-4, and g-6 findings (§ 300, subds. (b), (g)), along with the findings and orders removing A.L. from Father's custody, placing A.L. in foster care, bypassing reunification services for Father, and terminating parental rights. (§ 361.5, subds. (b)(9), (c)(2).) CFS counters that Father's jurisdictional claims are "moot and nonjusticiable" because the b-1 finding pertaining to Mother's untreated substance abuse, which Father does not challenge, is sufficient to support jurisdiction over A.L. CFS also argues this court should not "reopen the final jurisdictional findings" because Father has not shown that the findings "are prejudicial to him." We conclude that, even if Father's claims are moot, it is appropriate to exercise our discretion to consider them.

1. Justiciability and Discretion to Consider Moot Claims

The justiciability doctrine holds that courts only have jurisdiction to consider existing controversies, not moot questions or abstract propositions. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489-1490 ["It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue."], overruled in part on other grounds by *In re D.P.* (2023) 14 Cal.5th 266, 283 (*D.P.*).) "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*Id*. at p. 1490.) A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief. (*Ibid*.)

20

A jurisdictional finding is not moot if the parent can demonstrate "a specific legal or practical consequence that would be avoided upon reversal" of the finding. (*D.P.*, *supra*, 14 Cal.5th at p. 283; *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1493.) In this event, "*merits review is required*"; that is, the review of the finding is not a matter of the court's discretion. (*D.P.*, at p. 283, italics added.) Conversely, "[w]hen a parent has not made such a showing, *the case is moot, but the court has discretion to decide the merits nevertheless*." (*Ibid*, added italics.)

The "availability" of this discretion is "particularly important" in the dependency context where a number of factors tend to render parents' appeals moot. (*D.P.*, *supra*, 14 Cal.5th at pp. 283-284.) "For example, the principle that '[d]ependency jurisdiction attaches to a child, not to his or her parent' (*In re D.M.* (2015) 242 Cal.App.4th 634, 638)" means that jurisdiction over the child may be based on a single jurisdictional finding pertaining to one parent, and render additional jurisdictional findings immaterial, whether those findings pertain to either or both parents (*D.P.*, at pp. 283-284).

A court may consider a number of factors in determining whether to exercise its discretion to consider an otherwise nonjusticiable or moot claim. (*D.P.*, *supra*, 14 Cal.5th at pp. 285-287.) These include "whether the challenged jurisdictional finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or ' "could have other consequences for [the appellant], beyond jurisdiction." ' " (*D.P.*, at p. 285, quoting *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; *In re Madison S.* (2017) 15 Cal.App.5th 308, 318.) The court may also consider why the appeal became moot. (*D.P.*, at pp. 286-287.)

Other factors may also be relevant, and "no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal. Ultimately, in deciding whether to exercise its discretion, a court should be guided by the overarching goals of the dependency system: 'to provide maximum safety and protection for children' with a 'focus' on 'the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child.' " (*D.P.*, *supra*, 14 Cal.5th at p. 286.) In sum, "[a] reviewing court must decide on a case-by-case basis whether it is appropriate to exercise discretionary review to reach the merits of a moot appeal. . . ." (*Id*. at p. 287.)

2. Analysis

Father does not argue that his substantial evidence claims are *not moot* and that this court is therefore *required* to review them. (*D.P.*, *supra*, 14 Cal.4th at p. 283.) Rather, Father asks that we exercise "discretionary review" of the b-2, b-4, and g-6 jurisdictional findings, and the findings that Father is A.L's mere biological father, on the grounds these findings (1) were erroneous and (2) were, in part, bases for the dispositional orders "removing A.L. from his physical custody, suitably placing the child in foster care, bypassing reunification services" for Father, and terminating parental rights.

CFS argues Father's jurisdictional claims are moot and nonjusticiable because b-1 finding is sufficient to support jurisdiction. CFS further argues this court should not "reopen" the b-2, b-4, and g-6 findings because Father "fails to articulate any specific prejudice he did or likely would suffer if [these counts] were sustained in error but

allowed to stand." (*In re. I.A., supra,* 201 Cal.App.4th at p. 1493 [declining review where father failed to suggest "a single specific legal or practical consequence from [the] finding, either within or outside the dependency proceedings"].)

In addition, CFS argues several factors militate against discretionary review of the jurisdictional findings. These include: (1) the jurisdictional findings are not "based on particularly pernicious or stigmatizing conduct" (*D.P.*, *supra*, 14 Cal.5th at pp. 285-286); (2) Father did not seek custody of A.L.; (3) given his incarceration, Father would not have been able to complete reunification within the six- to twelve-month period for a minor under age three (§ 361.5, subd. (a)(1)(B)); (4) Father waived his right to appear at the proceedings; (5) Father's "jurisdictional challenge is based on facts, not on a legal question"' and, finally; (6) parental rights have been terminated, adoption has been ordered, and A.L. is being raised with a stable, loving family.

We agree that it is difficult to discern how Father is or may be prejudiced by the challenged jurisdictional findings and disposition orders. The b-1 finding is sufficient to support jurisdiction, and given his incarceration, Father could not have completed reunification services for A.L. within the statutory time frame. (§ 361.5, subd. (a)(1)(B).) The findings and orders also did not affect Father's visitation, as Father did not visit A.L. until after he was released from prison in October 2023. At the February 14, 2024 section 366.26 hearing, CFS's reports showed and the court found A.L. did not have a substantial positive emotional attachment to Father, and for this reason, among others, the parental benefit exception did not apply. (§ 366.26, subd. (c)(i)(B).) Given Father's incarceration until October 2023, this would have been the case even if the b-2, b-4, and

23

g-6 findings had not been made, and even if Father had been offered reunification services.

There is also no showing that any of the challenged findings and orders prevented A.L.'s placement with paternal relatives as an alternative to foster care. Before the detention hearing, the PGF said he was unable to assist with A.L.'s care. At the initial jurisdiction and disposition hearing, the PGF and PGM were present but there is no indication they offered to care for A.L. at that time or at any other. Nor does Father claim the challenged findings and orders had consequences for Father " ' "beyond jurisdiction." ' " (*D.P.*, *supra*, 14 Cal.5th at p. 285.)

Nonetheless, Father is correct that, if there is insufficient evidence to support the jurisdictional findings pertaining to Father, "the outcome of this appeal is the difference between [F]ather's being an 'offending' parent versus a 'non-offending' parent." (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 763.) Thus, even if Father's claims are moot and we are not required to consider them (*D.P.*, *supra*, 14 Cal.5th at p. 283), we exercise our discretion to consider Father's claims, in order to illustrate that the challenged findings and orders were correct and, as a result, Father cannot establish prejudice, an ineffective assistance claim, or a due process claim based on Father's failure to appeal the disposition orders.

C. *Substantial Evidence Supports the Challenged Jurisdictional Findings*

Father claims insufficient evidence supports the b-2, b-4 and b-6 jurisdictional findings, but Father does not challenge the b-1 finding. We conclude substantial evidence supports the challenged findings.

To recap, in sustaining the b-1 allegation, the court found Mother had an untreated substance abuse problem that impaired her ability to care for A.L., and this placed A.L. at risk of emotional or physical harm. (§300, subd. (b)(1).) In sustaining the b-2 allegation, the court found Father "knew or should have known" Mother had "substance abuse issues" and failed to protect A.L. from that risk. (*Ibid.*) And, in sustaining the b-4 and g-6 allegations, the court found Father left A.L. without provision for care and support when he was incarcerated around June 8, 2022, and Father could not "arrange for the care and custody of the child during his incarceration." (§ 300, subds. (b)(1), (g).)

"On appeal, '[a] dependency court's jurisdictional findings are reviewed under the substantial evidence test. [Citation.] Under this test, we resolve all conflicts in the evidence, and indulge all reasonable inferences that may be derived from the evidence, in favor of the court's findings.' [Citation.] 'The judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' " (*In re Madison S.*, *supra*, 15 Cal.App.5th at p. 318.)

A juvenile court may find that a child is subject to the court's jurisdiction under section 300, subdivision (b)(1), if the court finds by a preponderance of the evidence that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] . . . [t]he failure or inability of the child's parent … to adequately supervise or protect the child, . . . [¶] . . . [or] by the willful or negligent failure of the parent … to provide the child with adequate food, clothing, shelter, or medical treatment . . . [¶] . . . [, or] by the inability of the parent . . . to provide

25

regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse." (§ 300, subd. (b)(1).)

There are three elements of jurisdictional showing under section 300, subdivision (b)(1): (1) the parent's inability to provide the necessary supervision or protection of the minor; (2) causation; (3) serious physical harm or illness to the minor, or the substantial risk of either. (*In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561.) " '[T]he question under section 300 is whether the circumstances *at the time of the hearing* subject the minor to the defined risk of harm.' " (*In re Ma.V.* (2021) 64 Cal.App.5th 11, 23.)

A jurisdictional finding under section 300, subdivision (g) requires a showing that the child's parent "has been incarcerated . . . and cannot arrange for the care of the child . . . ." (§ 300, subd. (g).) The statute applies if, at the time of the jurisdictional hearing, the parent *has been* incarcerated and the parent is, at that time, *unable* to arrange for the care of the child. (*In re R.M.* (2024) 99 Cal.App.5th 240, 247.) The statute "requires only that an incarcerated parent *arrange adequately for the care of the child* during the period of [the parent's] incarceration. It is irrelevant whether or not the caretaker is a suitable long-term placement." (*In re Monica C.* (1994) 31 Cal.App.4th 296, 305, italics added; § 300, subd. (g).)

Father claims insufficient evidence supports the b-2 finding that he knew or should have known of Mother's untreated substance abuse issues and failed to protect A.L. and the b-4 and g-6 findings that he could not provide for A.L. during his incarceration. Father argues that, at the time the court made these findings at the jurisdiction and disposition hearing on November 30, 2022, "the only facts about" Father were that (1) he

26

was in state custody, (2) before he was incarcerated, he lived with Mother, A.L., and Mother's older children, and (3) he supported the family financially when he lived with the family. Regarding the b-4 and g-6 findings, Father argues the social worker "could not determine whether he was able to arrange" for A.L.'s care while he was incarcerated because the social worker did not contact Father in preparing for the jurisdiction and disposition hearing.

We disagree with Father's view of the evidence. First, substantial evidence supports the b-2 finding that Father knew or should have known Mother had an untreated substance abuse problem with methamphetamine that placed A.L. at risk of physical and emotional harm. The record shows Father lived with Mother, A.L., and Mother's older children for three months before Father was incarcerated in June 2022. Although Mother denied having a history of abusing methamphetamine, the record supports a reasonable inference that Mother in fact had a history of abusing methamphetamine, and that Father knew or should have known of this history and the health and safety risks it posed to A.L. when Father became incarcerated in June 2022.

When Mother was arrested in August 2022 for hauling a stolen trailer, Mother was driving a car with three adult passengers, and nine-month-old A.L. was in the back seat. A "baggie" of methamphetamine was found several inches from A.L., and a "meth pipe" was found in A.L.'s car seat. The car contained dirty and soiled diapers, and all of the baby bottles in the car contained stale milk. Before the detention hearing, the MGM said she knew of Mother's past substance use. Although Mother denied having a substance abuse problem and claimed the methamphetamine in her car did not belong to her,

27

Mother had a criminal history that included methamphetamine possession, Mother tested positive for amphetamines and methamphetamines during the proceedings, and Mother ultimately sought admission in Father's sober living home. All of this evidence supports a reasonable inference that Mother had a methamphetamine problem when Father became incarcerated in June 2022, and that Father knew or should have known of the problem when he became incarcerated and the health and safety risks it posed to A.L.

Second, the record supports a reasonable inference that Father *could not* arrange for A.L.'s care during his incarceration, at the time of the November 30, 2022 jurisdiction and disposition hearing. (§ 300, subd. (g).) Although, the social worker did not contact Father before the hearing to ask Father whether he could arrange for A.L.'s care, nothing in the record indicates Father had the means to arrange for A.L.'s care during any part of his incarceration. Father appeared at the original jurisdiction and disposition hearing on October 3, 2022, and waived his right to be transported to future hearings. Throughout the proceedings, Father never offered any relatives or others who could take custody of A.L. The PGF reported, before the August 31, 2022 detention hearing, that he was unable to assist with A.L.'s care. The PGF and PGM were both present at the original jurisdiction and disposition hearing on October 3, 2022, but they did not offer to take custody of A.L. In sum, substantial evidence supports the b-2, b-4, and g-6 jurisdictional findings.

D. *Substantial Evidence Supports the Findings Underlying the Bypass Order*

Father next claims the court erroneously found Father was A.L.'s "mere biological father" and not A.L.'s presumed Father. Again, we disagree.

28

" 'In dependency proceedings, "fathers" are divided into four categories—natural [or biological], presumed, alleged, and de facto.' [Citation.] A biological father is one whose paternity is established, but who does not qualify as a presumed father. [Citation.] An alleged father is a man who may be the father, but who has not yet established himself as either a biological father or a presumed father. [Citation.] . . . The distinction is important because only a presumed father *is entitled* to custody or a reunification plan. [Citations.] An alleged father is not entitled even to appointed counsel, except for the purpose of establishing presumed fatherhood. [Citations.] Indeed, it is generally said that an alleged father's rights are limited to an opportunity to appear and assert a position and attempt to change his paternity status. . . .' . . . [¶] . . .[¶] . . . A man who claims entitlement to presumed father status has the burden of establishing by a preponderance of the evidence the facts supporting his entitlement." (*In re J.O.* (2009) 178 Cal.App.4th 139, 146-147, fn. omitted.)

Family Code section 7611 provides in relevant part that a man is presumed to be the natural father of a child if he received "the child into [his] home and openly holds out the child as [his] natural child." (Fam. Code, § 7611, subd. (d).) " 'In determining whether a man has "receiv[ed a] child into his home and openly h[eld] out the child" as his own [citation], courts have looked to such factors as whether the man actively helped the mother in prenatal care; whether he paid pregnancy and birth expenses commensurate with his ability to do so; whether he promptly took legal action to obtain custody of the child; whether he sought to have his name placed on the birth certificate; whether and how long he cared for the child; whether there is unequivocal evidence that he had

29

acknowledged the child; the number of people to whom he had acknowledged the child; whether he provided for the child after it no longer resided with him; whether, if the child needed public benefits, he had pursued completion of the requisite paperwork; and whether his care was merely incidental.' " (*In re J.H.* (2011) 198 Cal.App.4th 635, 646.)

We review a court's presumed parentage determination under the substantial evidence standard. (*In re M.C.* (2011) 195 Cal.App.4th 197, 213.) " '[W]e review the facts most favorably to the judgment, drawing all reasonable inferences and resolving all conflicts in favor of the order. [Citation.] We do not reweigh the evidence but instead examine the whole record to determine whether a reasonable trier of fact could have found for the respondent.' " (*Ibid.*)

Moreover, when as here the court has expressly or impliedly concluded that the man claiming presumed father status did not carry his burden of proof, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, overruled on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010; *In re J. M.* (2023) 89 Cal.App.5th 95, 111 [accord].)

Father claims the record compels a finding he is A.L.'s presumed father, and he is therefore entitled to presumed father status and reunification services. Specifically, he argues the following evidence establishes he "openly held out" A.L. as his natural child

30

(Fam. Code, § 7611, subd. (d)):  Mother reported Father was present when Mother gave birth to A.L.; Father signed A.L.'s birth certificate; Father lived with Mother, A.L., and Mother's older children, for approximately one year before Father was incarcerated in June 2022; and Father supported the family financially.  Father also claims his request for a paternity test at the detention hearing was not to dispute paternity; it was to "elevate his status" to presumed father status, as his counsel indicated.  Father claims he objected to the jurisdictional findings pertaining to him, and dispositional finding he was merely A.L's biological father, because he wanted to reunify with A.L.  Father also notes that he visited A.L. following his release from state custody.

We disagree that this evidence, and the record as a whole, compels a finding that Father is A.L.'s presumed father.  A man seeking presumed father status under Family Code section 7611, subdivision (d), must show he is "someone who has entered into a familial relationship with the child:  someone who has demonstrated an abiding commitment to the child and the child's well-being . . . ." (*E.C. v. J.V.* (2012) 202 Cal.App.4th 1076, 1085.)  "Presumed parent status is afforded only to a person with a *fully developed parental relationship* with the child . . . ." (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 776.)  "What ultimately matters to presumed parent status is a person's commitment to the child and the responsibilities of parenthood." (*In re Alexander P.* (2016) 4 Cal.App.5th 475, 494.)

Although the record shows Father was present at A.L.'s birth, signed A.L.'s birth certificate, lived with Mother and A.L. for approximately one year before he was incarcerated in June 2022, and supported the family financially, the record does not

31

*unequivocally* show that Father made an abiding commitment to A.L. and A.L.'s wellbeing. The record does not show that Father helped Mother with prenatal care or that Father supported Mother and A.L. continuously after A.L.'s birth in November 2021. (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1211 [Whether the father "actively helped the mother in prenatal care," and "whether and how long [the father] cared for the child" are factors the court may consider in determining presumed father status.].)

Thus, the record indicates and supports a reasonable inference that Father's commitment to A.L. may have been of a limited nature, rather than an abiding, permanent commitment. (*E.C. v. J.V.*, *supra*, 202 Cal.App.4th at p. 1085; *In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1654 -1655.) In sum, the record does not unequivocally show that Father is entitled to presumed father status. (§ 7611, subd. (d).)

CFS points out there is (1) no evidence that Father signed a voluntary declaration of parentage, a requirement for an unmarried father, such as Father, to be included on a child's birth certificate (Health & Saf. Code, § 102425, subd. (a)(4)(C)[9]) and (2) no evidence Father submitted a Judicial Council form JV-505 [Statement Regarding Parentage] to the juvenile court. (See *In re D.P.* (2015) 240 Cal.App.4th 689, 695-696.) Father counters that CFS never asked Father to submit a form JV-505 to the court, and

_____

[9] Health & Safety Code section 102425, subdivision (a)(4)(C) provides: "If the parents are not married to each other, the name of the person identified by the woman giving birth as the only possible genetic parent other than the woman giving birth . . . shall not be listed on the birth certificate unless the woman who gave birth to the child and . . . the only possible genetic parent other than the woman who gave birth . . . sign a voluntary declaration of parentage at the hospital before the birth certificate is submitted for registration."

argues his signature on A.L.'s the birth certificate "confirms" that both he and Mother signed a voluntary declaration of parentage. On this point, Father has filed a request that this court take judicial notice of a certified copy A.L.'s birth certificate, showing Father's signature on A.L.'s birth certificate. CFS opposes the request on the grounds (1) the birth certificate was not presented to the juvenile court, and (2) Father's signature on the birth certificate does not establish that the parents signed a voluntary declaration of parentage for A.L.

We grant Father's request and take judicial notice of A.L.'s birth certificate (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) But we agree with CFS that, on this record, Father's signature on A.L.'s birth certificate does not establish that the parents signed a voluntary declaration of paternity for Father. (*In re D.A.* (2012) 204 Cal.App.4th 811, 826-827 [presumption that voluntary declaration of paternity was signed because the alleged father signed the child's birth certificate does not apply where the record contains no evidence that relevant hospital staff members knew the parents were not married, and would therefore have ensured that the declaration was signed before the father was allowed to sign the birth certificate].) Further, no voluntary declaration of paternity is in the record, and a completed voluntary declaration of paternity, standing alone, does not entitle a man to presumed father status in a dependency proceeding. (*In re Jovanni B.* (2013) 221 Cal.App.4th 1482, 1493-1494.)

E. *There Was No Substantive Due Process Violation*

Father claims the juvenile court violated his substantive due process rights to parent A.L. in erroneously bypassing services for him, that is, in erroneously finding he

was A.L's mere biological father, not presumed father, and that it was not in A.L.'s best interest to offer Father services "based on his lack of contact" with A.L. and his "custodial status." Father maintains that, because he was in fact A.L's presumed father, the court was required to order services for him unless it determined by clear and convenient evidence that those services would be detrimental to A.L. (§ 361.5, subd. (e)(1).) He argues the court's finding that services for him would not serve A.L's best interests is not synonymous with a detriment finding, and there is no evidence his " 'custodial status' posed detriment" to A.L. Thus, Father argues "there is no justification for bypassing the reunification services he is entitled to receiv[e]."

As explained, however, the court did not err in finding Father was not A.L.'s presumed Father. Thus, Father was not entitled to reunification services, and the court was not required to find that services for Father would be detrimental to A.L. in order to bypass services for Father. (§ 361.5, subd. (a); see *In re T.G.* (2013) 215 Cal.App.4th 1, 18.) Thus, "no fundamental substantive due process violation appears" in any of the proceedings adjudicating A.L. a dependent, bypassing services for Father, and terminating parental rights. (See *In re Jasmon O.* (1994) 8 Cal.4th 398, 419-422.)

### III.  DISPOSITION

The November 30, 2022 jurisdiction findings and dispositional orders and the February 14, 2024 section 366.26 orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORT

FIELDS
  J.

We concur:

RAMIREZ
  P.J.

McKINSTER
  J.